UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-381-H

MARK OETINGER, BRIAN WALSH, ERIC
WRIGHT, JEFF MATTIS, CHRISTOPHER
CRUMPTON, JEFF HARRIS, CHARLES
SCOTT, and all others similarly situated                                      PLAINTIFFS


V.


FIRST RESIDENTIAL MORTGAGE NETWORK,
INC. a/k/a SUREPOINT LENDING                                                   DEFENDANT

**MEMORANDUM AND ORDER**

Plaintiffs have moved for sanctions against Defendant and its co-owners for unauthorized contact with members of the opt-in Plaintiffs' class. Two communications are involved, both from Jordan Pohn, one of the co-owners of Defendant and also a member of the Kentucky Bar.

The first communication to the opt-in Plaintiffs suggested that the individual contacted may not have understood "what they were signing up for." The letter described the extensive discovery process that may take place, which was said to include "exploring Plaintiffs' hard drives, personal and work internet usage records, e-mail records, phone records, review of non-compete arguments. . . [and] interviews with co-workers." The second communication purported to request Plaintiffs' summer plans so that depositions and discovery could be scheduled, noting that all depositions would be taken in Louisville. It also mentioned again the type of invasive discovery that would occur.

Prior to writing these letters, Mr. Pohn apparently contacted his counsel, who told Mr.

Pohn that he could not assist in the communication but that parties were free to contact other parties. He did not advise Mr. Pohn any further. Mr. Pohn did send a copy of Pohn's communication to Plaintiffs' counsel, who immediately objected.

A.

The Kentucky Rules of Professional Conduct prohibit a lawyer from contacting another represented party. KY. SUP. CT. R. 3.130(4.2). The rules do not, however, restrict a party's right to initiate communication with the other side. *Id.* cmt. 1. But notwithstanding the possibility of direct party-to-party contact under the ethical rules, difficulties may arise where such communications involve a legal matter or details concerning the lawsuit. For a variety of reasons, communications regarding such subjects may be inappropriate as a practical matter, though not explicitly barred by the rules of professional ethics.

These types of circumstances present difficult choices for lawyers. That is why most lawyers instruct their clients not to contact opposing parties, except with permission; and why most lawyers would not want opposing parties contacting their clients. Such cautiousness avoids difficult situations such as we find here. The Formal Ethics Opinions of the Kentucky Bar Association support this conclusion. *See* Ky. Bar. Ass'n, Formal Op. E-365 (1994)(noting that although the ABA has rescinded opinions purporting to make contact between clients *per se* violations, "such communications are usually unproductive if not counterproductive. Conventional wisdom suggests that the lawyer should discourage such contacts, but he or she cannot be responsible for a "violation" simply because his client makes such a contact."). What seems clear in this instance is that counsel may have been wise at least to inquire as to the nature of his client's proposed communication to insure that it was appropriate. Though counsel may

have no ethical obligation to inquire further, prudent lawyering would suggest such action. Thus, the ethical rules are not directly implicated as the Court understands the facts.

B.

Though the ethical rules do not formally resolve the situation here, the Court is mindful that Plaintiffs in this case have moved for conditional certification as a collective action pursuant to the Fair Labor Standards Act.  As in Rule 23 class actions, "once an [FLSA] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure the task is accomplished in an efficient and proper way." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989).[1]  Because of the potential for abuses in collective actions, "a district court has both the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981).  When premised on a specific record by the moving party showing the particular abuses, the district court may "restrict certain communications in order to prevent frustration of the policies of Rule 23." *Id.* at 102 (internal quotation omitted).

Judicial intervention is justified where there is a "clear record and specific finding that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101-02.  Here, the Court recognizes that the former business relationship between the defendants and the plaintiffs may cause the communications to be intimidating, or at the very least confusing.  It is difficult to imagine any advice from Mr. Pohn regarding the lawsuit that is

---

[1] Although Defendant argues that the authority under Fed. R. Civ. P. 23(d) for class actions does not extend to a court managing a collective action, courts faced with communications issues have found it applicable. *See, e.g. Belt v. EmCare, Inc.* 299 F. Supp. 23 664, 667-68 (E.D. Tex. 2003).  Moreover, in *Hoffman*, the Supreme Court noted that "the same [class action] justifications apply in the context of a collective action." *Hoffman*, 493 U.S. at 170.  And, the concerns regarding unfair, misleading, or potentially coercive communications in collective actions remain even after plaintiffs affirmatively opt-in.

3

not rife with the potential for confusion and abuse given defendants' interest in this lawsuit, regardless of whether it was intended to mislead. The risk of unnecessary complication and confusion is especially high when communications contain potentially intimidating language about the nature and extent of discovery. Such communication may interfere with the administration of the collective action by encouraging parties not to continue to participate. For instance, when a party contacts another about scheduling depositions, something that lawyers are supposed to arrange, the communication is surely confusing.

To be clear, the Court does not find an actual ethical violation here. However, the Court will exercise its powers in the administration of this collective action to avoid the potential for future inappropriate communication by the parties. Mindful of the need to fashion a "carefully drawn order that limits speech as little as possible," the Court will not prohibit all contact between the parties. *See Gulf Oil,* 452 U.S. at 102. Rather, the Court entrusts to counsel, who will be in the best position to monitor the activity of the parties, the responsibility of (1) ensuring that the parties' communications are consistent with the principles of fairness and orderly notice inherent in the collective action mechanism and (2) restricting communications which would frustrate the policies of a collective action.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that counsel shall instruct Defendant and its employees to refrain from contacting Plaintiffs, opt-in Plaintiffs, and potential class Plaintiffs outside the bounds of formal discovery *for the purpose of discussing the captioned litigation*, except with permission of counsel. All other requests for relief are DENIED at this time.

cc: Counsel of Record