

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-381-H

MARK OETINGER, et. al.                                                                  PLAINTIFF

V.

FIRST RESIDENTIAL MORTGAGE                                                  DEFENDANTS
NETWORK, INC., et. al.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, former mortgage bankers employed by First Residential Mortgage Network, Inc. ("First Residential"), allege that First Residential did not compensate them for overtime work in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. The seven named Plaintiffs seek to represent all similarly situated mortgage bankers in a collective action pursuant to 29 U.S.C. § 216(b). Seventy-eight (78) other First Residential mortgage bankers requested to opt-in to the collective action.

Plaintiffs also allege the same violations under the Kentucky Wages and Hours Act, KRS 337.010, *et seq*. On these claims, Plaintiffs have moved to certify a class comprised of, "all present and former Mortgage Bankers of First Residential Mortgage Network, Inc., since August 7, 2001, who were not paid overtime compensation for time worked in excess of 40 hours per week or were not compensated for time worked."

Defendants moved to decertify the collective action for the FLSA claims and to deny class action certification of the state law claims. The Court will consider each of these issues in turn.

I.

First Residential is a mortgage lender and broker that employs mortgage bankers (also

known as "loan advisors") to provide loan proposals for those refinancing their existing home or purchasing a new home. These mortgage bankers work in teams directed by a general manager. Some, but not all, of the Plaintiffs served as general managers during their employment with First Residential. These general managers have broad discretion in running their teams, from building their teams to assigning work schedules. As a result, First Residential does not have a company-wide policy requiring mortgage bankers to work more than 40 hours a week. More important, for our purposes, the broad discretion afforded general managers means that a mortgage banker's work and experience will vary depending on her general manager.

Mortgage bankers deal directly with customers to find a loan package best suited for the client's needs. This includes securing all written materials necessary to obtain a loan, as well as helping the client through various "credit-repair" steps to allow the customer to get the best loan rate possible. First Residential argues that the only sale that occurs is convincing the client to use its services, and that the bulk of mortgage bankers' duties are administrative in nature. Plaintiffs on the other hand argue that they spend more than 50% of their time performing sales activity in the office.

Mortgage bankers' salaries are primarily determined by commissions. However, First Residential classified mortgage bankers as administrative employees. As such, it was required to make upward salary adjustments any time an employee's commissions did not generate a salary sufficient to meet the minimum salary requirement for administrative employees. Several Plaintiffs received these upward salary adjustments.

II.

The FLSA entitles non-exempt employees to receive and recover unpaid overtime

compensation. 29 U.S.C. § 216(b). Any employee may also bring suit on behalf of other employees so long as they have consented in writing and as long as the named plaintiff and the opt-in plaintiffs, those who have provided written consent, are similarly situated. *Id.* The statute does not define the term "similarly situated." Plaintiffs bear the burden of proving that they and the opt-in plaintiffs are similarly situated. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). Where plaintiffs fail to meet this burden, the claims of the named plaintiffs will proceed, while the claims of opt-in plaintiffs will be dismissed without prejudice. *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 U.S. Dist. LEXIS 71483 at *7 (D. Minn. 2006).

A.

Courts often examine collective actions in two stages. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). First, a court will conditionally certify a collective action to allow the parties to take discovery. This preliminary certification requires little showing by the plaintiff that she is similarly situated to the putative class. *Id.* After the close of discovery, though, "trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Id.* This makes sense. After discovery plaintiffs should have all the information they need to prove they are similarly situated. That is the situation here. Discovery is complete and First Residential has moved to decertify the conditional collective action.

When determining whether plaintiffs are similarly situated, courts look at: (1) disparate factual and employment settings of the individual plaintiffs, (2) the various individual defenses available to the defendant, and (3) fairness and procedural considerations. *Wilks v. Pep. Boys*, 2006 U.S. Dist. LEXIS 69537, at *3 (M.D. Tenn. 2006) (citing *Moss v. Crawford & Co.*, 201

F.R.D. 398, 409 (W.D. Pa. 2000)). Courts often look for a company-wide policy or plan when determining whether plaintiffs are similarly situated. See e.g. *O'Brien v. Ed Donnelly Enters.*, 2006 U.S. Dist. LEXIS 86895, at *12 (S.D. Ohio 2006); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507-08 (M.D. La. 2005); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003). The existence of such a plan usually means that the employer subjects all the employees to the same rules, thus ameliorating the differences between the disparate employment settings. Here, First Residential has no company-wide plan strictly governing the particular duties of every mortgage banker. Instead, the various general managers run teams of mortgage bankers working under them. This could suggest less consistent work policies.

Plaintiffs argue that First Residential did subject all mortgage bankers to a company-wide policy by classifying all of them as administrative employees. Administrative employees are those who are (1) compensated on a salary or fee basis at a statutorily proscribed rate, (2) whose primary duties are office or non-manual work directly related to the management or general business operations of the employer or the employer's customers, and (3) whose primary duties include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). They are exempt under the FLSA.

However, First Residential's own classification is not at all determinative of the proper classification under FLSA. First, the employer's classification means little compared to the employee's actual job duties and circumstances. Moreover, an employee's classification as an administrative employee is a defense to a claim for unpaid overtime wages, not a basis for the cause of action under the FLSA. Merely being classified as exempt does not give rise to a right

of action under 29 U.S.C. 216(b). Such right under the FLSA only accrues once the employee is owed unpaid amounts. 29 U.S.C. 216(b). The Court believes that companies may indeed apply company-wide policies to their employees, but these policies must cause the alleged FLSA violation for the policy to be considered as a factor in determining whether employees are "similarly situated" for purposes of bringing a collective action.

Plaintiff cites *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233 (11th Cir. 2008) and *In re Wells Fargo*, 527 F. Supp. 2d 1053 (N.D. Cal. 2007) for the proposition that a company-wide exemption determination merits a finding that employees are similarly situated. However, *Morgan* merely says that the meaning of a company-wide decision may be litigated where the district court has already determined the employees are similarly situated. *Morgan*, 551 F.3d at 1264. The Ninth Circuit recently overruled the district court's decision in *Wells Fargo*. *In re Wells Fargo*, 2009 WL 1927711 (9th Cir. July 7, 2009), quoting the same passage from Plaintiffs' brief and concluding that the district court abused its discretion by placing too much weight on the exemption policy.

B.

The representative Plaintiffs argue that they should be considered similarly situated to the opt-in plaintiffs, because they all perform the same duties. However, some, but not all, of the Plaintiffs were general managers or managers, who had different duties than mortgage bankers who did not hold these management positions. Furthermore, individual general managers have broad discretion in running their teams, which means an employee's work may vary depending on which team she works. Thus even a cursory glance at the record shows that Plaintiffs were not similarly situated with regard to the work they performed.

Similarly, First Residential will have highly individualized defenses to the various claims. In order to assess either of the administrative or executive exemptions as a defense to a given plaintiff's claim, the Court would have to go through an individualized appraisal of the employee's duties and responsibilities. General managers in charge of running the teams, may assign different duties to those working under them. They may also put a larger emphasis on trying to acquire clients, i.e. selling the First Residential's services, versus spending more time with each client to ensure the best possible loan. These facts, which will vary between individuals, will matter in determining whether the administrative exemption applies to the employee.

This goes to the heart of Plaintiffs' argument that they are similarly situated. At the most basic level, Plaintiffs claiming that they are all similarly situated, because First Residential incorrectly classified them as exempt employees. However, to determine whether an employee is correctly classified as exempt, the Court must look at each individual's duties and responsibilities, which vary according to which general manager the mortgage banker worked. Thus, the central question in the case, whether Plaintiffs are properly classified as exempt, cannot be determined on a class-wide basis.

### C.

Finally, fairness and procedural considerations favor decertification in this case. Collective action benefits litigants and the judiciary by (1) lowering the cost to plaintiffs to vindicate their rights by pooling resources and (2) resolving common issues of law and fact in one action. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Here, the disparity between the duties, responsibilities, and amount of work performed by individual probably

negates both benefits of a collective action. The Court could not accurately determine whether any exemption applied to the class as a whole, and the individualized determinations may result in higher costs to plaintiffs.

III.

Plaintiffs have moved to certify their state law claims as a class action. The Court has broad discretion in determining whether to certify a class. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). Plaintiffs seeking class certification must first satisfy the requisite elements under Rule 23(a). *In re Am. Med. Sys.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). To meet the requirements of Rule 23(a), plaintiffs must show: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties fairly and adequately protect the interests of the class. *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004) (citing Fed R. Civ. P. 23(a)).

A.

While Rule 23 does not make class definition an explicit element of class certification, the Court considers the definition when determining whether to certify a class. *Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287, 291 (W.D.Ky. 2008) (citations omitted). Here Plaintiffs originally moved to certify a class defined as, "all present and former Mortgage Bankers of First Residential Mortgage Network, Inc., since August 7, 2001, who were not paid overtime compensation for time worked in excess of 40 hours per week or were not compensated for time worked." First Residential pointed out that certifying such a class makes First

Residential's liability an element of the definition. After First Residential pointed out this deficiency in Plaintiffs' proposed class definition, Plaintiff offered an amended definition in its reply brief. Plaintiffs proposed an amended class definition of, "all individuals who have worked as Mortgage Bankers for First Residential Mortgage Network, Inc., since August 7, 2001." The Court will treat Plaintiffs' motion for certification, as a motion to certify the amended class definition.

B.

Plaintiffs easily meet the numerosity and commonality requirements. Certification requires a class "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). However, while "the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir.2005) (quoting *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D.Ohio 2001)). Here Plaintiff argues the class contains over 1,400 individuals. Such a large class easily meets the numerosity requirement of Rule 23(a)(1).

To meet the commonality requirement of Rule 23(a) there must be a "single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996)). Plaintiff must show "a common issue the resolution of which will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998). Here Plaintiffs allege that the common issue of law is whether First Residential owes mortgage bankers money under the Kentucky Wages and Hours Act. Also, the issue of whether or not the administrative exemption

applies to mortgage bankers is common to the class. Since Plaintiffs have alleged some common issues of law they have met the requirement of Rule 23(a)(2).

C.

A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d at 1082. The named plaintiffs' claims should be aligned with those of the proposed class, such that "as goes the claim of the named plaintiff, so go the claims of the class," *Sprague*, 133 F.3d at 399.

Differences in amount or apportionment of damages will not necessarily defeat typicality. Thus the individualized determinations of how many hours an employee worked and the amount of overtime pay First Residential owes an employee do not preclude a finding of typicality. The Court cannot even reach these questions until after liability has been established.

As discussed in Section II, however, the highly individualized factual circumstances and defenses as to liability would preclude any class-wide resolution of the liability question. The lack of a company-wide policy regarding precisely what work and how much should be done and the decentralized decision making structure prevent the Court from finding that the claims arise "from the same event or practice or course of conduct." *In re Am. Med. Sys.*, 75 F.3d at 1082. Rather, each plaintiff's claim arises from the type of work plaintiff performed and the individual decisions made by her general manager.

D.

The final Rule 23(a) factor addresses conflicts of interest between the named plaintiffs and class members. See *Amchem Prods. Inc. v. Windsow*, 521 U.S. 591, 625-26 (1997). The

9

Supreme Court has said, "[t]he adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem*, 521 U.S. at 626 n. 20 (quoting *Falcon*, 457 U.S. at 157 n. 13). Despite Plaintiffs' claims that they adequately represent the class, one glaring flaw appears upon even modest examination. Plaintiffs are all former mortgage bankers at First Residential, but they seek to join in the class all current mortgage bankers. No current employees elected to opt in to the FLSA claim brought by Plaintiffs, who now seek to bind them in this action. Furthermore, Plaintiffs have moved for certification under Rule 23(b)(2), which would not even allow current employees to opt out of the class if it were certified. See *Reeb v. Ohio Dept. of Rehab. and Correction*, 435 F.3d 636, 645-46 (6th Cir. 2006). The Plaintiffs, who have no stake in the ongoing practices of First Residential, do not adequately represent current employees. See *Amchem*, 521 U.S. at 626. Thus Plaintiffs do not satisfy the adequacy of representation requirement of Rule 23(a)(4).

    Being otherwise sufficiently advised,

    IT IS HEREBY ORDERED that First Residential's motion to decertify the FLSA collective action is GRANTED.

    IT IS FURTHER ORDERED that the FLSA claims of all opt-in plaintiffs are DISMISSED WITHOUT PREJUDICE.

    IT IS FURTHER ORDERED that Plaintiffs' motion to certify the Kentucky Wages and Hours Act claims as a class action is DENIED.

The Court will set a conference in the near future to establish a trial date.

July 15, 2009

John G. Heyburn II, Judge
United States District Court

cc: Counsel of Record